FILED '08 SEP 04 11:30 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARY JANE BEAN, )
 )
        Plaintiff, ) Civil Case No. 07-6328-KI
 )
vs. ) OPINION AND ORDER
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
        Defendant. )
_____ )

Kathryn Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401

    Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Defendant

KING, Judge:

Plaintiff Mary Jane Bean brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Bean had severe impairments of neck pain, bilateral carpal tunnel syndrome, anxiety disorder with post-traumatic stress disorder traits, depression, and a history of substance abuse. However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After reviewing the medical records and other evidence, the ALJ found that Bean had the residual functional capacity to perform sedentary work with additional limitations of no repetitive use of her right

Page 4 - OPINION AND ORDER

arm or hand; no lifting with the right arm over four pounds; no frequent bending, stooping, or climbing; use of a cane is allowed; no complex tasks; and no contact with the general public. Based on vocational expert testimony, the ALJ found that Bean could work as a surveillance system monitor, and a data examination clerk and was thus not disabled under the Act.

## FACTS

Bean contends that her disability began on June 1, 2002 due to pain in her neck and arms, severe migraines, sciatic nerve problems, and symptoms of mental illness. She was 39 years old at the time of the hearing and has worked as a sales clerk, general clerk, survey worker, order taker, printer, construction helper, cashier, and knitting machine operator. Bean attended college with assistance from a tutor for reading and writing difficulties.

At the time of the hearing, Bean lived only with her 14-year old daughter, Candace, but she previously lived for many years with Jim Winkleman. Winkleman and Candace did all of the household chores except that Bean watered the plants, fed the fish, and grocery shopped with the rest of the family once a month. Winkleman helped Bean with bathing, brushing her hair, dressing, and shaving because Bean could not lift her arms. At times, Winkleman helped Bean use the toilet because Bean had difficulty getting up and down. He states that Bean's mental health problems caused Bean to be excessively irritable, to argue, and to be unable to leave the house alone. She also suffered from migraines at least twice a week and severe insomnia, not sleeping two nights a week.

Bean explains that she gets along with some people but other people's body language causes her to fear they will grab her or do something inappropriate. This fear causes Bean to

Page 5 - OPINION AND ORDER

have a verbal outburst, yelling at the person to get away from her. If the person does not comply, Bean starts screaming at them at the top of her lungs.

## DISCUSSION

I.   Bean's Subjective Symptom Testimony

Bean contends that the ALJ failed to give clear and convincing reasons for rejecting her testimony. She notes that there is confusion regarding her accidents: a car/car accident in July 1998 and a bike/bike accident in June 2001.

The Commissioner maintains that even if Bean is given the benefit of the doubt about the inconsistencies on the cause of her accidents, the ALJ gave sufficient additional reasons to discredit her testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ

Page 6 - OPINION AND ORDER

makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ stated that the objective findings did not support the degree of impairment Bean alleged. The ALJ relied on a list of Bean's daily activities, as she reported to Dr. Joffe, which the ALJ believed indicated normal functioning: preparing simple meals, crocheting, ceramics, coloring, participating in some friendships, driving, taking a bus, shopping, and doing laundry. The ALJ referred to exams in 2003 and 2006 in which Bean had some difficulties with tangential thought processes and impaired remote memory but was able to manage her symptoms and remain oriented. The ALJ compared Bean's physical symptoms with the physicians' objective findings that they deemed insignificant. The ALJ relied on the statement from Bean's therapist, Tina Armstrong, that Bean had a history of making false statements to her. Finally, the ALJ relied on Dr. Brewster's note that Bean underestimated her physical abilities, as demonstrated by the weight of the purse she was carrying to her exam. All of these reasons on which the ALJ relied to discredit Bean's symptom testimony are supported by the record. Specifically, although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also relied on Dr. Brewster's notation that Bean's story had changed three times concerning her two accidents. Although Dr. Brewster did state this, I agree with Bean that there is some confusion by her numerous health care providers about the two accidents. When I reviewed the entire record, I did not get the impression that Bean was inconsistent in her accounts.

Page 7 - OPINION AND ORDER

The ALJ was concerned that Bean's story about the physical abuse during her childhood changed over time. I reviewed the two statements noted by the ALJ, one from 2002 and one from 2006, and do not believe there is any inconsistency which would support a finding of a lack of credibility.

The ALJ gave sufficient reasons to discredit Bean, ignoring the two reasons which are not supported by the record. The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. Batson, 359 F.3d at 1197. I conclude that the ALJ gave clear and convincing reasons for rejecting Bean's credibility.

II.     Physician Opinions

Bean contends that the ALJ erred in rejecting the opinions of Dr. Truhn, examining psychologist, and Dr. LeBow, her treating doctor.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. An ALJ is not

Page 8 - OPINION AND ORDER

required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson, 359 F.3d at 1195.

A.  Dr. LeBow

Bean contends that the ALJ improperly rejected Dr. LeBow's opinion that she was permanently 100 percent disabled due to mental and physical conditions. She notes that Dr. LeBow noted all of her medications on the form he completed and that the form should be viewed in light of her entire treatment relationship with Dr. LeBow. Bean also argues that Dr. LeBow relied on Dr. Truhn's report concerning her mental limitations and that the MRIs and nerve conduction studies support his opinion regarding her physical condition.

The Commissioner argues that the ALJ properly rejected Dr. LeBow's opinion because it was conclusory and unsupported by clinical findings. Concerning the other parts of the record which Bean contends support Dr. LeBow's opinion, the Commissioner dismisses Dr. Truhn's report for the reasons stated below and contends that the minimal findings from the MRIs and nerve conduction studies do not support Dr. LeBow's opinion of total disability.

On November 1, 2004, Dr. LeBow completed a form, apparently to support Bean's request to cancel a student loan because of disability. Dr. LeBow stated that Bean had cervical neuritis, radiculitis in the right arm, chronic pain in the right arm affecting strength and coordination, post traumatic stress disorder, chronic anxiety, anger outbursts, and poor concentration. He declared Bean 100 percent permanently disabled and without the ability to ever engage in any form of employment. "The diagnosis plus needed meds make it difficult for patient to participate in common workplace." Tr. 298. The ALJ gave little weight to this opinion because Dr. LeBow did not provide objective findings to support the conclusion.

Page 9 - OPINION AND ORDER

The record contains Dr. LeBow's chart notes from November 2003 to July 2006. They are filled with Dr. LeBow's efforts to diagnose and treat Bean's physical pain and mental symptoms. In light of the detail in the chart notes, the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. LeBow's opinion.

B.  Dr. Truhn

Bean argues that the ALJ did not mention the marked and moderate mental limitations Dr. Truhn identified and did not address Dr. Truhn's testing that revealed Bean's difficulty with concentration, attention, knowledge, and use of vocabulary words.

The Commissioner contends that the ALJ did not err. The Commissioner reasons that even though the ALJ did not discuss Dr. Truhn's limitations, they are addressed by the ALJ's limitations of no complex tasks and no contact with the general public. The Commissioner also notes that Dr. Truhn suggested vocational rehabilitation for Bean so he must have concluded that she was capable of working.

Dr. Truhn performed a psychological evaluation of Bean on October 21, 2003. He completed a Mental Residual Functional Capacity Report, noting that Bean was moderately limited in numerous areas and markedly limited in two areas: (1) "ability to maintain attention and concentration for extended periods"; and (2) "ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes." Tr. 209. "Markedly limited" is defined on the form to be a "limitation which precludes the ability to perform the designated activity on a regular and sustained basis." Tr. 208.

Although the ALJ referred to Dr. Truhn's report a few times, he did not address these limitations. The ALJ gave the vocational expert a hypothetical with mental limitations of "cannot perform complex tasks" and "no contact with the general public."

I am unpersuaded by the Commissioner's argument that the ALJ included Dr. Truhn's limitations in the hypothetical. Dr. Truhn's marked limitation of inability to get along with co-workers without distracting them or exhibiting behavior extremes is a completely different issue than keeping Been out of contact with the general public. It is also a much more significant limitation in that most jobs have some contact with co-workers or supervisors. Likewise, Dr. Truhn's marked limitation of inability to maintain attention and concentration for extended periods is not addressed by limiting Bean to "no complex tasks." Dr. Truhn's limitation includes the fact that Bean would have attention problems, even with simple tasks.

I also note some other records demonstrate the severity of Bean's mental limitations. Bean, whose given name is Mary Jane, was assessed by the Center for Family Development on March 20, 2006, before she started treatment. The assessment states:

> Shortly after the [car] accident she began having panic attacks along with flashbacks of abuse that she experienced at different points in her life. She began calling herself Jane in the period after the accident, experiencing herself as different from "Mary." The client states that Jane is a calmer person, and better able to choose trustworthy associates. She sees Mary, the person who she had been before that, as mean, vindictive, breaking up other people's relationships, and not caring very much about others besides herself and her close family members. She states that Mary is now locked up in a cage, but tries to get out. Jane has been fighting Mary these past six months and is fearful of her. For example, this past weekend, the client states that Mary "came out" and lashed out and threatened others with her anger. Six months ago, the client was experiencing suicidal ideation as well, and she attributes to Mary plans to carry it out. She wants Jane to take over for Mary, adding that Jane does recognize that a lot of her good qualities do come from Mary, who is thirty nine years old, whereas Jane is only eight.

Page 11 - OPINION AND ORDER

Tr. 404.

This assessment is approximately six months prior to Bean's last date insured of September 30, 2006. The ALJ referred to another page of the assessment in his opinion but did not address these symptoms. For the mental limitations, the ALJ relied on the reports of DDS psychologists, Dr. LeBray and Dr. Hennings, dated September 2004 and January 2005. Those doctors did not have the benefit of the later treatment records from the Center for Family Development.

I also note two medical records from March and April 2007, which are after Bean's date last insured. These records were provided to the Appeals Council but the ALJ did not see them.

On March 15, 2007, Bean came to the Center for Family Development. The chart note states:

> [P]hysical altercation w/ husband created homelessness (eviction) and decompensation. Client "lived in the woods" for 6 weeks.
>
> [C]lient was presenting explosive/dangerous to self and others (alternate personality). At CFD office Ct appeared disheveled/screaming obscenities, etc., has recently begun to stabilize
>
> . . . .
>
> . . . Above homelessness brought on by a physical altercation during an extreme violent manic episode. Police were called/no arrests made.

Tr. 456.

On April 3, 2007, Bean was voluntarily hospitalized for psychiatric treatment for a week. She came to an emergency room with her partner and was intermittently changing between her two personalities. Jane was "fairly quiet and cooperative and reasonable thinking, she changes with a more agitated, loud, pressured speech and calling him names." Tr. 465. At times, "she

screws her face into a scowl and yells in an angry voice with obscenities. Afterwards she says 'That was Mary coming out.'" Tr. 468.

Although these episodes were six to seven months after Bean's date last insured, they show the severity of her mental health problems which were evident to the therapists at the Center for Family Development six months prior to her date last insured.

The ALJ erred by failing to address Bean's moderate and marked limitations, as assessed by Dr. Truhn. The significance of that error is demonstrated by the records which were available to the Appeals Council.

III.   Remedy

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

Because the ALJ did not properly account for the opinions of Dr. LeBow and Dr. Truhn, the hypothetical question has no value.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen, 80 F.3d at 1292. The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of

Page 13 - OPINION AND ORDER

whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

Additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. Harman, 211 F.3d at 1180. The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits. The case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. Id.

I must remand the case because the ALJ needs to consider the significant mental deterioration Bean suffered, as evidenced by the later medical records sent to the Appeals Council, in addition to reanalyzing the opinions of Dr. LeBow and Dr. Truhn. If the ALJ concludes that Bean could be employable, I also ask the ALJ to address any limitations Bean suffers due to her reading disorder and disorder of written expression, as diagnosed by Dr. Joffe.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this 3rd day of September, 2008.

/s/ Garr M. King
Garr M. King
United States District Judge

Page 14 - OPINION AND ORDER